IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

Vs.                                            Nos.  01-40033-01-SAC

JOSEPH V. MULAY,

        Defendant.

MEMORANDUM AND ORDER

At the parties' urging, the court recently lifted (Dk. 146) the agreed stay (Dk. 142) on Mr. Mulay's motion to vacate under 28 U.S.C. § 2255 for relief pursuant to *Johnson v. United States*, 135 S. Ct. 2551(2015) (Dk. 138).[1] When the court stayed this case, Mr. Mulay had agreed with the government's position that:

> [A]ny decision by the Court at this time would be purely advisory given the Supreme Court's decision on June 27, 2016, to grant certiorari and answer the following questions in the case of *Beckles v. United States*, Docket No. 15-8544 (June 27, 2016):  (1) whether *Johnson v. United States*, ---U.S.---, 135 S.Ct. 2551(2015), applies retroactively to collateral cases challenging federal sentences enhanced under the residual clause in U.S.S.G. § 4B1.2(a)(2); and (2) whether *Johnson's* constitutional holding applies to the residual clause in U.S.S.G. § 4B1.2(a)(2), thereby rendering challenges to sentences enhanced under it cognizable on collateral review. Because both

---

[1] The Supreme Court in *Johnson* invalidated as unconstitutionally vague the residual clause in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), and this holding was made retroactive to ACCA cases on collateral review by *Welch v. United States*, ---U.S.---, 136 S.Ct. 1257 (2016).

> questions presented directly inform the issues before this Court a decision in the instant matter would be advisory in advance of the Supreme Court rendering a final decision in *Beckles*.

(Dk. 141, p. 2 (footnotes omitted). At the end of November of 2016, the United States Supreme Court entertained oral argument in *Beckles*. As of the filing date of this order, the Supreme Court has not issued its decision. In appreciation of the parties' earlier agreement that a decision now would be of an "advisory" character, the court will be brief.

Following Mr. Mulay's entry of guilty pleas to two drug trafficking offenses and to possession of a firearm during a drug trafficking offense, a Presentence Report ("PSR") was prepared. It calculated a base offense level of 36 for the drug offenses and added up the criminal history points for a category three result. Because of Mr. Mulay's two prior felony convictions for crimes of violence, specifically the criminal threat conviction at ¶ 56 and the aggravated assault conviction at ¶ 61, the PSR determined the defendant was a career offender under U.S.S.G. § 4B1.1 with an offense level of 37 and a criminal history category of six.  After the acceptance of responsibility adjustment, the defendant's resulting guideline range was 262-327 months with a consecutive five-year term of imprisonment for the firearm count. On February 14, 2002, the court sentenced the defendant to an effective sentence of 180 months on the drug counts and a consecutive 60 months on firearm count for a controlling term of 240 months. (Dk. 61).

On June 1, 2016, Mr. Mulay filed his § 2255 motion arguing that because of *Johnson* his prior state felony convictions no longer qualified as crimes of violence under U.S.S.G. § 4B1.2 and his sentence was therefore unconstitutional. (Dk. 138). He asks for *Johnson* to be read as announcing a new rule of constitutional law applicable to the United States Sentencing Guidelines ("guidelines") on collateral review. He contends the *Johnson* rule is substantive making its relief available on collateral review.

The government represents that since *Johnson* it has advocated for the Supreme Court's holding to be applied against the guidelines' residual clause in § 4B1.2 in all post-*Johnson* sentencings and in all cases pending on direct review after *Johnson* was decided. The government, however, has opposed applying the Supreme Court's holding retroactively to those guideline cases that were final before *Johnson*. The government's position is that *Johnson's* application to the guidelines' residual clause produces only "*procedural* changes in the sentencing process that are not retroactive on collateral review." (Dk. 147, p. 5). The government, however, concedes that if *Johnson* applied here retroactively then Mr. Mulay's prior conviction for criminal threat would no longer qualify as a crime of violence and his guideline sentencing calculations with this change would mean a total offense level of 33, criminal history category of III, and a final guideline range of 168-210 months.

The Tenth Circuit has held that *Johnson's* void for vagueness holding applies to the "virtually identical" residual clause in the guidelines. *United States v. Madrid*, 805 F.3d 1204, 1210 (10th Cir. 2015). It, however, has not decided whether *Johnson's* application to the guidelines' residual clause works retroactively to cases on collateral review. But in an order filed in this guidelines case, and in a published opinion, the Tenth Circuit authorized the filing of a second or successive § 2255 motion, because the movant had made a prima facie showing that *Johnson* was "a new rule of constitutional law that was made retroactive to cases on collateral review." Dk. 137, p. 2; *see In re Encinias*, 821 F.3d 1224 (10th Cir. 2016). This finding under 28 U.S.C. § 2244(b)(3)(C) involved "only a preliminary determination based on an expedited assessment as to whether the movant's case in support of authorization demonstrates possible merit to warrant a further exploration." *In re Encinias*, 821 F.3d at 1225 (internal quotation marks and citation omitted). The Tenth Circuit is not alone in this approach. *See, e.g., In re Patrick*, 833 F.3d 584, 587 (6th Cir. 2016); *In re Hubbard*, 825 F.3d 225 (4th Cir. 2016); *but see, In re Arnick*, 826 F.3d 787, 788 (5th Cir. 2016) (No authorization as "the Supreme Court has not addressed whether this arguably new rule of criminal procedure applies retroactively to cases on collateral review"); *Donnell v. United States*, 826 F.3d 1014, 1015-16 (8th Cir. 2016)(No authorization as Supreme Court has not made new rule retroactive to guidelines); *In re Griffin*, 823 F.3d 1350,

1355-56 (11th Cir. 2016) (No prima facie case for authorization to challenge guidelines' sentence under *Johnson*).

In looking at this issue, the court did consider what the Supreme Court has said recently on this issue of retroactivity:

> Justice O'Connor's plurality opinion in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), set forth a framework for retroactivity in cases on federal collateral review. Under *Teague*, a new constitutional rule of criminal procedure does not apply, as a general matter, to convictions that were final when the new rule was announced. *Teague* recognized, however, two categories of rules that are not subject to its general retroactivity bar. First, courts must give retroactive effect to new substantive rules of constitutional law. Substantive rules include "rules forbidding criminal punishment of certain primary conduct," as well as "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); see also *Teague, supra*, at 307, 109 S.Ct. 1060. Although *Teague* describes new substantive rules as an exception to the bar on retroactive application of procedural rules, this Court has recognized that substantive rules "are more accurately characterized as ... not subject to the bar." *Schriro v. Summerlin*, 542 U.S. 348, 352, n. 4, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). Second, courts must give retroactive effect to new " ' "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.' " *Id.*, at 352, 124 S.Ct. 2519; see also *Teague*, 489 U.S., at 312–313, 109 S.Ct. 1060.
> It is undisputed, then, that *Teague* requires the retroactive application of new substantive and watershed procedural rules in federal habeas proceedings.

*Montgomery v. Louisiana*, ---U.S.---, 136 S. Ct. 718, 728 (2016), as revised (Jan. 27, 2016). In short, new substantive rules of constitutional law are not subject to the retroactivity bar but "have retroactive effect regardless of when a conviction became final." *Id.* at 729. The Supreme Court in

*Montgomery* also shed clarifying light on this procedural/substantive distinction in terms of its purpose and operation:

> The category of substantive rules discussed in *Teague* originated in Justice Harlan's approach to retroactivity. *Teague* adopted that reasoning. *See* 489 U.S., at 292, 312, 109 S.Ct. 1060 (discussing *Mackey v. United States*, 401 U.S. 667, 692, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (opinion concurring in judgments in part and dissenting in part); and *Desist v. United States*, 394 U.S. 244, 261, n. 2, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting)). Justice Harlan defined substantive constitutional rules as "those that place, as a matter of constitutional interpretation, certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Mackey, supra*, at 692, 91 S.Ct. 1160. In *Penry v. Lynaugh*, decided four months after *Teague*, the Court recognized that "the first exception set forth in *Teague* should be understood to cover not only rules forbidding criminal punishment of certain primary conduct but also rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." 492 U.S., at 330, 109 S.Ct. 2934. *Penry* explained that Justice Harlan's first exception spoke "in terms of substantive categorical guarantees accorded by the Constitution, regardless of the procedures followed." *Id.*, at 329, 109 S.Ct. 2934. Whether a new rule bars States from proscribing certain conduct or from inflicting a certain punishment, "[i]n both cases, the Constitution itself deprives the State of the power to impose a certain penalty." *Id.*, at 330, 109 S.Ct. 2934.
> Substantive rules, then, set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose. . . . Procedural rules, in contrast, are designed to enhance the accuracy of a conviction or sentence by regulating "the manner of determining the defendant's culpability." *Schriro*, 542 U.S., at 353, 124 S.Ct. 2519; *Teague, supra*, at 313, 109 S.Ct. 1060. Those rules "merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Schriro, supra*, at 352, 124 S.Ct. 2519. Even where procedural error has infected a trial, the resulting conviction or sentence may still be accurate; and, by extension, the defendant's continued confinement may still be lawful. For this reason, a trial conducted under a procedure found to be unconstitutional in a later case does not, as a general matter, have the automatic consequence of invalidating a defendant's conviction or sentence.
> The same possibility of a valid result does not exist where a substantive rule has eliminated a State's power to proscribe the

6

> defendant's conduct or impose a given punishment. "[E]ven the use of impeccable factfinding procedures could not legitimate a verdict" where "the conduct being penalized is constitutionally immune from punishment." *United States v. United States Coin & Currency*, 401 U.S. 715, 724, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). Nor could the use of flawless sentencing procedures legitimate a punishment where the Constitution immunizes the defendant from the sentence imposed. "No circumstances call more for the invocation of a rule of complete retroactivity." *Ibid*.
>     By holding that new substantive rules are, indeed, retroactive, *Teague* continued a long tradition of giving retroactive effect to constitutional rights that go beyond procedural guarantees. *See Mackey, supra*, at 692–693, 91 S.Ct. 1160 (opinion of Harlan, J.) ("[T]he writ has historically been available for attacking convictions on [substantive] grounds"). Before *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), "federal courts would never consider the merits of a constitutional claim if the habeas petitioner had a fair opportunity to raise his arguments in the original proceeding." *Desist*, 394 U.S., at 261, 89 S.Ct. 1030 (Harlan, J., dissenting).

*Montgomery v. Louisiana*, 136 S. Ct. at 729–30. From this discussion, one can glean that a rule is substantive if it prohibits certain conduct from being proscribed, certain persons from being covered, or certain punishment from being imposed. Substantive rules effectuate constitutional guarantees such that certain laws and punishment cannot be imposed but automatically result in the invalidation of and immunization from a conviction or sentence. A rule is procedural if it only works to improve the accuracy of a conviction or sentence through the manner of determination. "Such rules alter the range of permissible methods for determining whether a defendant's conduct is punishable." *Welch*, 136 S.Ct. at 1265. Procedural rules recognize only the possibility of an inaccurate conviction or sentence and reserve accuracy for

further determination. Of course, stating these distinctions in this way may belie the difficulty with applying them in different contexts.

The court also has taken into consideration what the Supreme Court said in *Welch* in holding that the *Johnson* rule was substantive and retroactive:

> Under this framework, the rule announced in *Johnson* is substantive. By striking down the residual clause as void for vagueness, *Johnson* changed the substantive reach of the Armed Career Criminal Act, altering "the range of conduct or the class of persons that the [Act] punishes." *Schriro, supra*, [542 U.S. 348] at 353, 124 S.Ct. 2519 [(2004)]. Before *Johnson*, the Act applied to any person who possessed a firearm after three violent felony convictions, even if one or more of those convictions fell under only the residual clause. An offender in that situation faced 15 years to life in prison. After *Johnson*, the same person engaging in the same conduct is no longer subject to the Act and faces at most 10 years in prison. The residual clause is invalid under *Johnson*, so it can no longer mandate or authorize any sentence. *Johnson* establishes, in other words, that "even the use of impeccable factfinding procedures could not legitimate" a sentence based on that clause. *United States v. United States Coin & Currency*, 401 U.S. 715, 724, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). It follows that *Johnson* is a substantive decision.
> By the same logic, *Johnson* is not a procedural decision. *Johnson* had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the Armed Career Criminal Act. *See Schriro*, 542 U.S., at 353, 124 S.Ct. 2519. It did not, for example, "allocate decisionmaking authority" between judge and jury, *ibid.*, or regulate the evidence that the court could consider in making its decision, see *Whorton v. Bockting*, 549 U.S. 406, 413–414, 417, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007); *Mackey, supra*, [401 U.S. 667] at 700–701, 91 S.Ct. 1160 [(1971)] (opinion of Harlan, J.). Unlike those cases, *Johnson* affected the reach of the underlying statute rather than the judicial procedures by which the statute is applied. *Johnson* is thus a substantive decision and so has retroactive effect under *Teague* in cases on collateral review.

*Welch*, 136 S. Ct. at 1265. In sum, the Supreme Court regarded the *Johnson* rule as substantive in that it altered the range of conduct or the class of

persons that the ACCA had mandated for punishment and sentence. The Supreme Court also said that *Johnson* was not procedural because it did not deal with the range of permissible methods for determining whether a defendant should be sentenced under the ACCA.

Applying these distinctions to *Johnson's* impact in the sentencing guideline context raises many questions. It is this court's impression that the courts finding the *Johnson* rule to be substantive have taken little moment of the guideline context. They have been quick to conclude that *Johnson* is changing the substantive reach of the guidelines by deleting the residual clause and as altering the range of punishable conduct by removing some prior offenses from the definition of a crime of violence. *See, e.g. In re Patrick*, 833 F.3d at 588; *In re Hubbard*, 825 F.3d at 234-35. The court finds that analysis to be lacking in breadth and depth. For example, missing from this analysis is the obvious proposition that the *Johnson* rule procedurally removes only one of the alternative guideline methods for evaluating prior offenses. The *Johnson* rule does not preclude these prior offenses from being considered alternatively under the guidelines as part of the defendant's criminal history. Because there is little to be gained from laying out a detailed analysis when the Supreme Court will likely rule on this issue within months, the court will say that it is more persuaded that the *Johnson* rule functions as a procedural rule and not as a substantive one. Because the rule is being applied to advisory sentencing guidelines which only guide a

sentencing court's exercise of discretion, and because this rule does not alter the range of conduct or the class of persons to be punished under the sentencing guidelines, the *Johnson* rule does not function as it did in *Welch* by changing "the substantive reach" of a statutorily mandated punishment. 136 S. Ct. at 1265.  After reading and considering the different rulings to date, the court concurs with the following analysis:

> The function of the *Johnson* rule is markedly different in the Guidelines context than in a case involving the erroneous imposition of a sentence under the ACCA. "*Johnson* had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the Armed Career Criminal Act." *Id*. [*Welch*, 136 S.Ct. at 1265]. By contrast, sentencing a defendant in light of an erroneous application of § 4B1.2 does not alter the statutory boundaries for sentencing set by Congress for the crime. It may result in incorrect advice to the sentencing court, but it does not authorize an otherwise-inapplicable statutory mandatory minimum sentence or produce a higher-than-otherwise-applicable statutory maximum, as is true under the ACCA with respect to comparable error. *See Mistretta v. United States*, 488 U.S. 361, 396 (1989) (Sentencing Guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress"). Because a Guidelines provision cannot "mandate or authorize any sentence," *see Welch* at 1265, an erroneous Guidelines calculation does not alter the range of sentencing options available to the court. The function of the Guidelines range is to provide a framework for the exercise of discretion under 18 U.S.C. § 3553(a). *See Gall v. U.S.*, 552 U.S. 38, 49–50 (2007). Thus, a new rule that § 4B1.2(a)(2)'s (former) residual clause is void for vagueness functions as a procedural rule by reducing a defendant's advisory Guidelines range, changing the initial benchmark the sentencing court must take into account when determining an appropriate sentence.
>         To accept Defendant's retroactivity argument disregards the advisory nature of the Guidelines. Unlike the ACCA, a Guidelines classification does not "prescribe[ ] punishment." *Welch* at 1268. The Guidelines range is but one factor the court is required to consider in imposing a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a). That

latter standard remains the "overarching" instruction to the sentencing court, regardless of the calculated range. *Kimbrough v. U.S.*, 552 U.S. 85, 101 (2007) (noting that courts may vary from the advisory range to "tailor the sentence in light of other statutory concerns" and to reflect "disagreements with the Guidelines") (citations omitted). Here, the Court considered the relevant factors under § 3553(a) and concluded a thirty-month sentence satisfied the statutory purposes of sentencing. (Sent. Hr'g Tr. at 6) (ECF No. 47). The PSR's proposed enhancement based on the Defendant's prior robbery conviction and § 4B1.2 did not mandate that sentence, and that sentence would not have been prohibited absent that enhancement.

Because all Guidelines provisions are equally advisory, this Court agrees with the Government's argument that no justification exists to treat an enhancement based in whole or in part on the career offender guidelines as a substantive error eligible for correction on collateral review any more than any other errors in calculating a Guidelines range. *See Molina–Martinez v. U.S.*, 136 S. Ct. 1338, 1345–46 (2016) (improper calculation of Guidelines range is a "significant procedural error") (quoting *Gall*, 552 U.S. at 51). And while a theoretically erroneous range may have influenced (although not authorized) an ultimate sentence, the consequences of opening up to collateral attack all Guidelines sentences based on application of the residual clause would be far more consequential, yet have far less justification, than permitting collateral attacks on unlawful ACCA sentences. *Cf. Welch*, 136 S. Ct. at 1266 (noting the finality-based justifications for withholding retroactive effect to new procedural rules, notwithstanding "[t]he chance of a more accurate outcome," in contrast to the justifications for retroactivity "if a new rule changes the scope of the underlying criminal proscription").

In the retroactivity context, a substantive sentencing rule is one that changes the lawful boundaries of punishment, not a rule that alters the factors a sentencing court may consider in imposing a discretionary sentence within an authorized range. Like other erroneously considered factors, the advisory range exerts an influence on the ultimate sentence, but does not change the authorized range of punishment. *See Molinez–Martinez*, 136 S. Ct. at 1346 (Guidelines "inform and instruct the district court's determination of an appropriate sentence"). Thus, weighing an improper factor in reaching an authorized sentence within unchanged boundaries is a procedural error that does not merit retroactive effect. For these reasons—even aside from Defendant's procedural default, which separately warrants dismissal of his § 2255 motion—Johnson does not afford him any relief.

*Miller v. United States*, 2016 WL 7256875, at *8–9 (D. Wyo. Dec. 15, 2016). Though it found this analysis of substantive distinction most persuasive, the court is mindful of other decisions to the contrary. *See, e.g., United States v. Aldershof*, 2016 WL 7210717 (D. Kan. Dec. 13, 2016); *United States v. Trujillo*, 2016 WL 7034973 (D. Colo. Dec. 1, 2016); *United States v. Kennedy*, ---F. Supp. 3d---, 2016 WL 6520524 (E.D. Cal. Nov. 3, 2016). The *Johnson* rule is not substantive and does not afford the defendant relief on collateral review.

An appeal from a final order in a § 2255 proceeding may not be taken unless a circuit justice or judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This "standard is met when 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner.'" *Welch*, 136 S.Ct. at 1263 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court in *Welch* also observed, "[o]btaining a certificate of appealability 'does not require a showing that the appeal will succeed,' and 'a court of appeals should not decline the application . . . merely because it believes the applicant will not demonstrate an entitlement to relief.'" *Id.* at 1263-64 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003)). The parties did not address issuance of a certificate of appealability in their initial briefs. Because the government

did challenge issuance of a certificate in the prior § 2255 proceeding, because this court ruled then that the sentencing error "did not result in any arguable denial of a constitutional right as the court sentenced him in the exercise of its departure discretion from a § 5K1.1 motion and not under the mandatory enhanced sentencing guidelines for career offenders," *United States v. Mulay*, 2016 WL 107936, at *4 (D. Kan. Jan. 8, 2016), and because the Tenth Circuit found that Mr. Mulay's claimed error in the career offender status determination was not a federal constitutional claim of error, *United States v. Mulay*, 642 Fed. Appx. 853, 855 (10th Cir. Mar. 2, 2016), *cert. denied*, 137 S. Ct. 371 (Oct. 31, 2016), the court directs the parties to submit their positions promptly on issuance of a certificate of appealability in this § 2255 proceeding.

IT IS THEREFORE ORDERED that Mr. Mulay's motion to vacate under 28 U.S.C. § 2255 for relief pursuant to *Johnson v. United States*, 135 S. Ct. 2551(2015) (Dk. 138) is denied.

Dated this 26th day of January, 2017, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge